# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

Case No. 24-3086
Decided via Published Opinion on July 25, 2025
Bloomkatz, Gilman and Readler

---

## MONICA GRAY,

Plaintiff-Appellant,

v.

## STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *et al.*,

Defendants-Appellees.

---

Appeal from the United States District Court
for the Southern District of Ohio, Eastern Division
Case No. 2:20-CV-6038
Honorable Algenon L. Marbley

---

## APPELLANT MONICA GRAY'S RESPONSE IN OPPOSITION TO THE PETITION FOR REHEARING BY PANEL OR *EN BANC* OF APPELLEES STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY AND JOE KYLE

---

Laren E. Knoll (Ohio Bar No. 0070594)
**THE KNOLL LAW FIRM LLC**
7240 Muirfield Drive, Suite 120
Dublin, Ohio 43017
Telephone: (614) 372-8890
Facsimile: (614) 452-4850
Email: lknoll@knolllaw.com
*Lead Counsel for Appellant Monica Gray*

Daniel I. Bryant (Ohio Bar No. 0090859)
**BRYANT LEGAL, LLC**
4400 North High Street, Suite 310
Columbus, Ohio 43214
Telephone: (614) 704-0546
Facsimile: (614) 573-9826
Email: dbryant@bryantlegalllc.com
*Co-Counsel for Appellant Monica Gray*

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS ……………………………………………………...i

TABLE OF AUTHORITIES……………………………………………….ii

I.       INTRODUCTION…………………………………………………...1

II.      THE MAJORITY'S CAUSATION ANALYSIS CONFORMS
         TO *STAUB*, *NASSAR*, AND SIXTH CIRCUIT PRECEDENT………………3

III.     GRAY MUST ONLY IDENTIFY COMPARATORS WITH WHOM
         SHE IS SIMILARLY SITUATED IN ALL RELEVANT ASPECTS………...7

IV.      *STAUB, NASSAR* AND *CHATTMAN* SUPPORT THE
         MAJORITY'S
         DECISION……………………………………………………10

V.       THE MAJORITY'S OPINION ADDRESSED AND REJECTED
         PETITIONER'S ARGUMENT THAT HEIGHTENED SCRUTINY
         OCCURRED BECAUSE OF DIFFERENT MANAGERS………………..13

VI.      GRAY ASSERTED ALL OF THE ARGUMENTS UPON
         WHICH THE MAJORITY RELIED………………………………14

VII.     CONCLUSION…………………………………………………17

CERTIFICATE OF COMPLIANCE…………………………………...18

CERTIFICATE OF SERVICE………………………………………….19

# TABLE OF AUTHORITIES

**CASES**                                                          **PAGE(S)**

*Adamov v. U.S. Bank Nat'l Ass'n*, 681F.App'x 473 (6th Cir.2017)........................15

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)……………………………..11

*Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741 (6th Cir.2012)……………………8

*Bostock v. Clayton Cnty.*, 590 U.S. 644 (2020)…………………………………………12

*Bristol Reg'l Women's Ctr., P.C. v. Slatery*, 993 F.3d 489 (6th Cir.2021)……………1

*Drerup v. NetJets Aviation, Inc.*, No. 22-3475, 2023 U.S. App. LEXIS 16469 (6th Cir.2023)……………………………………………………………...8-9

*EEOC v. New Breed Logistics*, 783 F.3d 1057 (6th Cir.2015)……………………15

*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir.1998)…………8

*Hamilton v. Gen. Electric Co.*, 556 F.3d 428 (2009)…………………………………13

*Howard v. Cherokee Health Systems*, No. 24-5981, 2025 WL 2506651 (6th Cir. Sept. 2, 2025)………………………………………………………………13

*Issa v. Bradshaw*, 910 F.3d 872 (6th Cir.2018)………………………………………..1

*Jackson v. FedEx Corp. Servs., Inc.,* 518 F.3d 388 (6th Cir.2008)…………..…………7

*Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769 (6th Cir. 2016)……….8

*Jones v. Potter*, 488 F.3d 397 (6th Cir.2007)………………………………………14

*Kenney v. Aspen Techs., Inc.*, 965F.3d 443 (6th Cir.2020)…………………………15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)…………11

*McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273 (1976)……………………9

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)………………………7, 9

*McMillan v. Castro*, 405 F.3d 405 (6th Cir.2005)…………………………………..8

*Mitchell v. Toledo*, 964 F.2d 577 (6th Cir.1992)……………………………………8

*Mitts v. Bagley*, 626 F.3d 366 (6th Cir. 2010)………………………………………..2

*Nelson v. Adams USA, Inc.*, 529 U.S. 460 (2000)…………………………………15

*Poland v. Chertoff*, 494 F.3d 1174 (9th Cir.2007)…………………………………10

*Robinson v. Quicken Loans, LLC*, No. 21-1392, 2022 WL 4234072
(6th Cir. Sept. 14, 2022)……………………………………………………..7, 8

*Sandowski v. McAleenan*, 423 F.Supp.3d 959 (D. Haw.2019)……………………..11

*Staub v. Proctor Hosp.*, 562 U.S. 411 (2011)…………………………………*passim*

*United States v. Sineng-Smith*, 590 U.S. 371 (2020)…….………………………14

*Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338 (2013)……………...12

*Wright v. Murray Guard, Inc.*, 455 F.3d 702 (6th Cir.2006)……………………...8-9

*Zamora v. City of Houston*, 798 F.3d 326 (5th Cir.2015)…………………………..10

**OTHER AUTHORITIES**

Fed.R.Evid.301……………………………………………………………………..7

Fed.R.App Proc 40…………………………………………………………………1

## I.    INTRODUCTION

Federal Rule of Appellate Procedure 40 sets forth narrow circumstances for panel or *en banc* review. The Court must have overlooked or misapprehended a particular point of law or fact. For *en banc*, a petitioner must demonstrate the panel decision (a) conflicts with a decision of the court to which a full court's consideration is necessary to secure or maintain uniformity of the court's decisions; (b) conflicts with a decision of the United States Supreme Court; (c) conflicts with authoritative decision of another Untied States court of appeals; or (d) the proceeding involves a question of *exceptional* importance." None of these circumstances exist here and the petition should be denied in its entirety.

Petitioners seek review to rehash prior arguments solely because they generally disagree with the majority's well-reasoned and thorough opinion, but mere disagreement does not necessitate panel review and "[h]ardly renders initial hearing en banc 'necessary.'" *Bristol Reg'l Women's Ctr., P.C. v. Slatery*, 993 F.3d 489, 490 (6th Cir. 2021) (Sutton, J.) (*en banc* review is "not favored and ordinarily will not be ordered"). As Chief Judge Sutton opined, "[t]he trust implicit in delegating authority to three-judge panels to resolve cases as they see them would not mean much if the delegation lasted only as long as they resolved those cases correctly as others see them." *Issa v. Bradshaw*, 910 F.3d 872, 877–78 (6th Cir. 2018) (Sutton, J., concurring in the denial of rehearing *en banc*). The majority opinion is thorough

and in conformity with precedent from the U.S. Supreme Court. It does not conflict with authoritative decisions of another court of appeals, and surely does not involve a question of exceptional importance. Since Petitioners cannot meet any of these circumstances, panel or *en banc* review would be "a rarely satisfying, often unproductive, always inefficient process." *Mitts v. Bagley*, 626 F.3d 366, 370 (6th Cir. 2010) (Sutton, J., concurring in the denial of *en banc*).

Joe Kyle ("Kyle") reported Monica Gray ("Gray"), an employee he resented for her statutorily protected activity, had manually entered time.  Kyle, the biased influencer and supervisor, selectively provided Petitioner information, a small piece true and the rest a blatant lie, about Gray that would appear as "time theft" because he knew that timecard falsification was a terminable offense "for sure." (Kyle Depo. Doc. 30, Ex L to MSJ, pgs 124-125, PAGEID# 2002-2003) Gray made a manual entry as permitted by her supervisor, Chris Martin ("Martin"), and consistent with the practice of Martin's team. Kyle falsely reported observing Gray taking long breaks, alleging she had previously been coached for similar behavior. He did so to place Gray in the ire of State Farm ("Petitioner"). Petitioner, influenced by Kyle's presentation of information, discharged Gray without engaging in an investigation independent of the Kyle's report. Kyle remained involved in the investigation by "interpreting Verint" for Martin thereby providing information to the investigator Geri Keeling.  (Defendants' Mot. for Summ. J. as Attachment J, D. 30-16, PAGEID#

1707) Supreme Court law precedent renders this an appropriate context for applying the *Staub* cat's paw doctrine, which was sufficiently presented to the District Court and the Appellate panel.

## II.  THE MAJORITY'S CAUSATION ANALYSIS CONFORMS TO *STAUB*, *NASSAR*, AND SIXTH CIRCUIT PRECEDENT.

Petitioners claim the majority opinion improperly expands the underlying legal doctrine on proximate cause by "crafting a bright-line rule that 'report[ing] true but selective information' will 'always' be the proximate cause of any subsequent employment action – no matter what information a later investigation uncovers," but Petitioners mischaracterize the majority holding and seek to resurrect Justice Alito's "bright-line, hard, and fast rule" explicitly rejected by Justice Scalia in *Staub* underscores denial of review.

As Justice Scalia explained: "The problem we confront arises when that official has no discriminatory animus but is influenced by previous company action that is the product of a like animus in someone else." *Staub v. Proctor Hosp.*, 562 U.S. 411, 417 (2011). The word "influence" was used because it snugly fit established law on proximate causation. "Animus and responsibility for the adverse action can both be attributed to the earlier agent (here, [Gray's then-supervisor]) if the adverse action is the intended consequence of that agent's discriminatory conduct." *Staub*, 562 U.S. at 419. "Proximate cause requires only 'some direct relation between the injury asserted and the injurious conduct alleged,' and excludes

only those 'link[s] that [are] too remote, purely contingent, or indirect.' We do not think that the ultimate decisionmaker's exercise of judgment automatically renders the link to the supervisor's bias 'remote' or 'purely contingent.' The decisionmaker's exercise of judgment is *also* a proximate cause of the employment decision, but it is common for injuries to have multiple proximate causes." *Id*., 562 U.S. at 419-20 (citations omitted).

Petitioners claim its "independent" investigation defeats proximate cause, but this argument contravenes *Staub*: "Nor can the ultimate decisionmaker's judgment be deemed a superseding cause of the harm. A cause can be thought 'superseding' only if it is a 'cause of independent origin that was not foreseeable.'" *Staub*, 562 U.S. at 420 (citations omitted). Indeed, Petitioners' view "[w]ould have the improbable consequence that if an employer isolates a personnel official from an employee's supervisors, vests the decision to take adverse employment actions in that official, and asks that official to review the employee's personnel file before taking the adverse action, then the employer will effectively be shielded from discriminatory acts and recommendations of supervisors that were *designed and intended* to produce the adverse action." *Id*. (emphasis original). It is inconceivable that *biased* influencers would not foresee that their employer would confirm by building in the record upon the basic facts selectively reported to it.

The majority opinion is directly in conformity with *Staub*. The facts Petitioner added during its investigation built on, but were not superseding of, the biased input. In *Staub*, the employer "suggest[ed] that even if the decisionmaker's mere exercise of independent judgment does not suffice to negate the effect of the prior discrimination, at least the decisionmaker's independent investigation (and rejection) of the employee's allegations of discriminatory animus ought to do so." *Staub*, 562 U.S. at 420. That suggestion was rejected: "We decline to adopt such a hard-and-fast rule." *Id.*

Returning to proximate cause, Justice Scalia explained that "[t]he supervisor's biased report may remain a causal factor if the independent investigation takes it into account without determining that the adverse action was, apart from the supervisor's recommendation, entirely justified." *Id.* In fact, the Supreme Court rejected the notion that an employer's mere conduct of an independent investigation has a claim-preclusive effect. *Id.* "Nor do we think the independent investigation somehow relieves the employer of 'fault.' The employer is at fault because one of its agents committed an action based on discriminatory animus that was intended to cause, and did in fact cause, an adverse employment decision." *Id.*

Justice Alito attacked that holding, claiming "that our failure to adopt a rule immunizing an employer who performs an independent investigation reflects a 'stray[ing] from the statutory text,'" Justice Scalia rebuffed: "We do not understand

this accusation. Since a supervisor is an agent of the employer, when he causes an adverse employment action the employer causes it; and when discrimination is a motivating factor in his doing so, it is a 'motivating factor in the employer's action,' precisely as the text requires." *Staub*, 562 U.S. at 421.

The majority's statement that "when a supervisor reports true but selective information, an investigation will always confirm the supervisor's allegation" conforms with *Staub's* holding that employers may be liable when there are selective reports that are "*designed and intended* to produce the adverse action." *Staub*, 562 U.S. at 420 (emphasis in original). As the majority points out, p.13, "[t]he Supreme Court has rejected such an "implausible reading of antidiscrimination provisions" as interpreted by Petitioners and the dissent. *Id.*

*Staub v. Proctor*, 561 U.S. at 421-22 (citation omitted), explained that "if the independent investigation relies on facts provided by the biased supervisor—as is necessary in any case of cat's-paw liability—then the employer (either directly or through the ultimate decisionmaker) will have effectively delegated the factfinding portion of the investigation to the biased supervisor. In sum, we do not see how 'fidelity to the statutory text,' requires the adoption of an independent-investigation defense that appears nowhere in the text."

Here, Petitioners seek endorsement of Justice Alito's suggestion of a presumption: if the employer's investigation of biased input builds on that input,

then liability cannot be found under *Staub*. Yet biased input can certainly "influence" a decision when related additional evidence is found. The key dichotomy is between influence and independence. A reasonable fact finder could conclude that the biased input at bar influenced Petitioner by causing an investigation only of Gray for the exact allegation provided by Kyle and that Petitioner relied, at least in non-superseding part, on that input.  The seminal *McDonnell Douglas* framework was an application of Fed.R.Evid. 301 and recognized one package of circumstantial evidence in no way precluded other circumstantial evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Petitioner's presumption displaces the discretion of a reasonable factfinder in contravention of the law.

## III.  GRAY MUST ONLY IDENTIFY COMPARATORS WITH WHOM SHE IS SIMILARLY SITUATED IN ALL RELEVANT ASPECTS

Petitioners' attempt to resurrect a rigid rule that comparators must be virtually identical or else no reasonable factfinder could infer differential treatment is not a circumstance to grant review. In fact, Petitioners arguments contravene Sixth Circuit precedent: courts must not apply the "similarly-situated" requirement so stringently that it "deprive[s a plaintiff] of any remedy to which he may be entitled under the law." *Jackson v. FedEx Corp. Servs., Inc.,* 518 F.3d 388, 396–97 (6th Cir. 2008). To be similarly situated in the Sixth Circuit, a plaintiff must only show that she is similar in all *relevant* respects to employees to whom she compares herself. *Robinson v. Quicken Loans, LLC*, No. 21-1392, 2022 WL 4234072, at *6 (6th Cir. Sept. 14, 2022)

(citing *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 777 (6th Cir. 2016) (emphasis original). An exact correlation between the plaintiff and the comparator is not required. *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 751-52 (6th Cir. 2012). The ultimate similarly-situated factor in the discipline context is "[w]hether the comparator's actions were of comparable seriousness to the conduct for which [she] was discharged." *Robinson*, 2022 WL 4234072, at *6 (6th Cir. Sept. 14, 2022) (citing *Jackson*, 814 F.3d at 777). *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998); *Mitchell v. Toledo*, 964 F.2d 577, 583 (6th Cir. 1992): *Wright v. Murray Guard, Inc*., 455 F.3d 702, 710 (6th Cir. 2006). Courts make an independent determination regarding relevancy of a particular aspect of an employee's employment and that of the comparator based on the facts of the case. *Id*. This is precisely what the majority opinion did in its holding consistent with Sixth Circuit precedent.

Whether an employee is "similarly situated" in all relevant factors is a flexible standard, and the factors considered are unique to each case. *McMillan v. Castro*, 405 F.3d 405, 413-14 (6th Cir. 2005). Petitioners assert that Gray's comparators must be "nearly identical." (Petition, p.11). But Gray "is not required to demonstrate an exact correlation with the employee[s] receiving more favorable treatment[.]" *Drerup v. NetJets Aviation, Inc.*, No. 22-3475, 2023 U.S. App. LEXIS 16469, *22 (6th Cir. 2023). Gray and her comparators must have engaged in acts of "comparable

8

seriousness." *Wright*, 455 F.3d at 710. Requiring Gray and the comparators to be "nearly identical" would be "overly narrow and unmoored from this Court's precedent." *Drerup*, 2023 U.S. App. LEXIS 16469, *22.

Kyle initiated the retaliatory investigation due to Gray's, allegedly false manual time entries. Manual entries were common practice for Martin's team. Other than Ms. Gray, however, no employee was terminated, investigated, or subjected to an informal inquiry, for their manual entries or any alleged violation of Petitioner's Policy at the Newark, Ohio location during 2017. (Martin Dep., p. 111, attached to Defendants' Mot. for Summ. J. as Attachment H,D.30-12,PAGEID#1390; Defendants' Answers to Plaintiff's Second Set of Interrogatories, attached hereto as Exhibit 17). Even if Kyle observed Gray, which is an issue of credibility for the jury, personal observation does not negate similarly situated employees who he did not observe. Any employee on Martin's team who made a manual entry is a similarly situated employee, and lack of personal observation is an unpersuasive ostrich defense in light of that common knowledge.

Petitioners emphasize that employees should not modify their hours to their benefit. As a matter of law, though, discrimination and retaliation statutes protect employees who have engaged even in allegations of "serious misconduct" from differential treatment. *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 (1976). In *McDonnell Douglas Corp.*, 411 U.S. at 794-75, employees ***admitted*** they

9

had "illegally stalled their cars on the main roads leading to [the employer's] plant for purpose of blocking access to it at the time of the morning shift change" without forfeiting statutory protection. The majority adhered to Sixth Circuit precedent by not requiring virtually identical comparators to survive a motion for summary judgment.

## IV.    *STAUB, NASSAR* **AND** *CHATTMAN* **SUPPORT THE MAJORITY'S DECISION.**

Petitioners allege that the majority "push[es] *Staub's* proximate cause requirement towards a … standard, under which an employer is liable 'any time a biased employee … sets in motion the process that leads to an adverse employment action.'" (Petition, p.7) (quoting Dissent, p. 36). The majority does not create such a rule as articulated by the dissent. The majority's rule is where a biased supervisor selectively reports a plaintiff but completely ignores the same known conduct by other employees, then that is retaliation because the plaintiff and her similarly situated coworkers are being treated differently. Selectively disciplining employees is the very definition of retaliation. The dissent quotes *Poland v. Chertoff*, 494 F.3d 1174, 1181 (9th Cir.2007) to support its assertion that the majority pushes *Staub* too far. Courts have questioned whether Poland is good law after *Staub*. In *Zamora v. City of Houston*, 798 F.3d 326, 335 (5th Cir.2015), the court, relying on *Staub*, held that "without the supervisors' statements, the adverse action would not have been

10

justified." See, also, *Sandowski v. McAleenan*, 423 F.Supp.3d 959, 981 (D. Haw. 2019).

Petitioners argue this case is a poor vehicle for creating a bright line rule because Kyle's report "was not selective" and Gray lacks proper comparators. As discussed, the majority followed Sixth Circuit precedent. Next, as detailed by the majority and set forth in detail below, Kyle selectively enforced the alleged time discrepancies. The majority noted that "Kyle reported Gray for conduct that was 'virtually identical' to Parker's." (Opinion, p.12). Petitioners attempt to distinguish Gray's conduct from Parker's by submitting a declaration by Kyle to explain reporting Gray to Hensley while coaching Parker. (Kyle Declaration,¶¶15-16,R.43-2,PAGEID#3710-3711). There is no evidence in the actual record to support Kyle's self-serving declaration. Accepting Kyle's declaration as true is viewing the evidence in the light most favorable to Petitioner, in contradiction of *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and making credibility determinations in contradiction of *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Petitioners also argue that "the new rule conflicts with this Court's decisions holding that causation did not exist because the reported facts were largely undisputed or had independent ample support in the record." (Petition,p.8). This is a very fact-intensive case that is not ripe for panel or *en banc* review. Gray disputes

11

that she stole time and provided explanations for the alleged discrepancies. Kyle set the stage that Gray was stealing time by "claim[ing] Gray had been previously coached for taking long lunches and suggesting that Gray likely misreported time on more than the three occasions[.]" (Opinion,p.13). Kyle influenced Petitioner to disbelieve Gray's denials of wrongdoing.

Relying on *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 358 (2013), Petitioners argue that "an employee who knows that he or she is about to be fired … might be tempted to" engage in protected activity and use that to show causation. Petitioners know there is no evidence in the record to support this assertion. Gray engaged in protected activity for months before Kyle's first opportunity to retaliate. When she first learned of the investigation, Gray told Keeling and Martin that Kyle was retaliating and that others made the same manual entries.

Petitioners argue that "retaliation claims require proof that the desire to retaliate was *the* but-for cause of the challenged employment action." (Petition,p.10)(emphasis in original). That is not the law under *Bostock v. Clayton Cnty.*, 590 U.S. 644 (2020). Under Title VII, the adoption of the traditional but-for causation standard means a defendant cannot avoid liability just by citing some *other* factor that contributed to its challenged employment decision. *Id*., at 656. Rather, *Bostock* holds that "[s]o long as the plaintiff's sex was *one* but-for cause of that

decision, that is enough to trigger the law." *Id.* at 656. Congress could have taken a more parsimonious approach by adding "solely" "because of" or "primarily because of," but "none of this is the law we have." *Id.*, at 657. *See, e.g., Howard v. Cherokee Health Systems*, No. 24-5981, 2025 WL 2506651, at *4 (6th Cir. Sept. 2, 2025) (citing *Bostock*, "because of … sex" means all employment actions in which sex is *a* but-for cause).

## IV.    THE MAJORITY'S OPINION ADDRESSED AND REJECTED PETITIONER'S ARGUMENT THAT HEIGHTENED SCRUTINY OCCURRED BECAUSE OF DIFFERENT MANAGERS.

The majority specifically rejected Petitioners' argument and explained that it was not comparing the management of Kyle versus Martin:

> State Farm responds that this increased scrutiny resulted not from Gray's protected activity, but from a change in supervisors. … Gray has evidence that Kyle did not scrutinize other employees on Martin's team in the same way as her. So the differences between Kyle's and Martin's supervisory styles do not explain the particular scrutiny that Gray encountered.

(Opinion, pp.7-8).

Petitioners argue that the majority's opinion conflicts with *Hamilton v. Gen. Electric Co.*, 556 F.3d 428 (6th Cir. 2009) because "the majority compared Kyle's consistent strict management style verifying timesheets, with that of Martin[.]" (Petition, p.14). Petitioners mischaracterize *Hamilton's* holding. In *Hamilton*, the employee alleged that his bosses' heightened scrutiny of him occurred after he filed an EEOC complaint. *Hamilton*, 556F.3d at 435. The *Hamilton* decision also cited

13

*Jones v. Potter*, 488 F.3d 397, 408 (6th Cir. 2007), which held that an employer cannot conceal an unlawful discharge by closely observing an employee and waiting for an ostensibly legal basis for discharge to emerge. As such, the majority opinion is in conformity with Sixth Circuit precedent.

## V. GRAY ASSERTED ALL OF THE ARGUMENTS UPON WHICH THE MAJORITY RELIED.

The majority relied on arguments asserted by Gray and, therefore, the majority's opinion does not violate the party presentation principle as interpreted by Petitioners in *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020).

Petitioners assert Gray never argued causation based on Kyle's "heightened scrutiny … after Gray engaged in protected activity." (Petition, p.15). Petitioners' assertion is completely meritless as this case focused on Kyle's retaliatory increased scrutiny of Gray's timecards while ignoring the manual entries made by her coworkers.

Though Gray did not use the exact words "heightened scrutiny," Gray clearly alleged and then argued that she was targeted and treated differently than her coworkers who also made manual entries, a permissible practice.  This is clearly synonymous and was set forth in extensive detail. "Heightened scrutiny is reflected by a similar three-step pattern: an employee engages in conduct that, while technically objectionable, is blessed, or at least tolerated, by the employer; the employee engages in protected activity; the employer then takes an adverse action

against the employee for conduct the employer had previously allowed. *See, e.g.*, *Kenney v. Aspen Techs., Inc.*, 965F.3d 443, 449 (6th Cir. 2020); *Adamov v. U.S. Bank Nat'l Ass'n*, 681F.App'x473, 479 (6th Cir. 2017) (heightened scrutiny found when bank terminated an employee shortly after protected activity for a wire transfer that was approved before without issue); *EEOC v. New Breed Logistics*, 783F.3d1057, 1063, 1070 (6th Cir. 2015) (heightened scrutiny found where employee was terminated for tardiness on the same day she complained of harassment, but was tardy on previous occasions without incident).

Gray explained her theory of the case in the Introduction, Statement of the Case, and the Summary of the Argument. Gray further asserted the argument in the Law and Argument section of Appellant's Brief at Part IV.B.1.d.i-ii, pp.33-45, D.22, PAGEID#43-55. Here, the "increased scrutiny" argument in Appellant's Reply Brief simply expands on the original argument in Appellant's Brief.

As the majority noted in footnote 2, "raising an argument does not require 'the incantation of particular words[,]' [n]or do we 'flunk a party simply because' their brief may have been 'inartfully' drafted." (Opinion, p.5, n.2, D.38-2, PAGEID#5) (citing *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 469 (2000).

Petitioners next assert "Gray's *prima facie* and pretext arguments focused on 'State Farm['s] adverse action of terminat[ion]," not Kyle's report and "[g]ranting this petition would … provide State Farm 'a fair chance to respond to the Kyle-

centric case the majority opinion now embraces.'" (Petition, p.15-16). This feigned surprise strains credulity - Kyle is a named defendant in this case because he "aided, abetted, incited, compelled or coerced an unlawful retaliatory practice and/or attempted directly or indirectly to commit an unlawful retaliatory practice." (Complaint, p.14-15, D.1,PAGEID#14-15). Gray's briefing was clear that her termination was fueled by Kyle's retaliatory animus.

Petitioners' assertion that Gray "sparingly referenced" the cat's paw theory is also manufactured. Gray argued under the cat's paw theory in her opposition to Petitioners' motion for summary judgment, asserted the "honest belief rule may not be applicable in a cat's paw theory of liability because the animus tainted the decisionmaker" and "cat's paw" is mentioned approximately 15 times. (D.42, p. 15 and 80-84) When questioned during the oral argument about whether the Cat's Paw theory should apply, Petitioner never mentioned that Gray forfeited the argument and responded with its independent investigation defense. (6th Cir. Oral Argument, 21:49)

In the Statement of Issues, Gray specifically argued: "Whether that District Court improperly used the 'honest belief' defense in a ***cat's paw theory case*** without first determining whether Petitioner conducted an independent investigation after Petitioner failed to investigate Appellant's complaints of retaliation for protected activity and being treated differently than her similarly situated coworkers."

(Appellant's Brief, p.2, D.22, PAGEID#12)(emphasis added). In the Summary of the Argument, and Law and Argument sections, Gray asserted that Kyle's retaliatory animus influenced Martin. (Appellant's Brief, p.18,D.22, PAGEID#28; *Id. at* p.50, D.22, PAGEID#60). Gray also cited *Staub*, the seminal Supreme Court case on the cat's paw theory of liability while noting Petitioners' position of "not liable for retaliation under the ADA and R.C.4112 for a cat's paw theory of liability because it honestly believed that Gray committed time theft." (Appellant's Brief,p.18,D.22, PAGEID#28). This is further supported by the fact that Petitioners argued extensively against the cat's paw theory in Petitioners' Brief at Part IV.D.1.a.ii, pp.60-67,D.27,PAGEID#73-80. Any assertion to the contrary simply lacks merit and/or is willfully ignorant of Gray's arguments does not meet the criteria for rehearing or en banc review.

## VI.    CONCLUSION

Based on the foregoing, Plaintiff-Appellant respectfully requests that Petitioners' Petition for Rehearing by Panel or *En Banc* be denied.

Respectfully Submitted,

*s/Laren E. Knoll*
Laren E. Knoll (0070594)
The Knoll Law Firm, LLC
7240 Muirfield Drive, Suite 120
Dublin, Ohio 43017
Telephone: (614) 372-8890
Facsimile: (614) 452-4850
Email: lknoll@knolllaw.com

17

*/s/ Daniel I. Bryant*
Daniel I. Bryant (0090859)
Bryant Legal, LLC
4400 N. High Street, Suite 310
Columbus, Ohio 43214
Telephone: (614) 704-0546
Facsimile: (614) 573-9826
Email: dbryant@bryantlegalllc.com

*Attorneys Plaintiff-Appellant Monica Gray*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document contains 3891 words of proportionally spaced, 14-point type using Microsoft word 365 and complies with applicable content, word count, and formatting requirements, including Rules 32 and 40 of the Federal Rules of Appellate Procedure and 6th Cir. R. 32.

Respectfully Submitted,

*s/Laren E. Knoll*
Laren E. Knoll (0070594)
The Knoll Law Firm, LLC
*Attorney for Plaintiff-Appellant Monica Gray*

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 8th day of September, 2025, the foregoing was filed via the Court's electronic filing system. Notice of filing will be performed by the Court's electronic filing system, and Parties may access the document through the Court's electronic filing system.

Respectfully Submitted,

<u>*s/Laren E. Knoll*</u>
Laren E. Knoll (0070594)
The Knoll Law Firm, LLC
*Attorney for Plaintiff-Appellant Monica Gray*